**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

Walter K. Murray,

Plaintiff,

vs.

South Carolina Central Railroad Company, LLC, a domestic corporation.,

Defendant.

Civil Action No.: 4:16-03841-AMQ

**ORDER AND OPINION**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant South Carolina Central Railroad Company, LLC ("Defendant"). (ECF No. 40.) For the reasons set forth below, the Court DENIES Defendant's Motion.

**BACKGROUND AND PROCEDURAL HISTORY**

This personal injury action arises out of a train accident that occurred on April 23, 2015 while Walter K. Murray ("Plaintiff") was operating a train owned and operated by Defendant. Defendant is a short-line freight railroad headquartered in Floyd, South Carolina. (ECF No. 40-1, at 2.) Plaintiff is a locomotive engineer employed by Defendant. (ECF No. 1, at 3.) Plaintiff's assigned duties on the date of the accident included transporting a rail car from Floyd, South Carolina to Florence, South Carolina and switching the rail car at a crossover upon arrival. (ECF No. 40-1, at 3.)

Plaintiff alleges that on April 23, 2015, he fell asleep while transporting Defendant's train from Floyd to Florence. (ECF No. 1, at 2.) As a result, the train he was operating sideswiped another train resulting in injury to Plaintiff. (ECF No. 1, at 1-8.) Prior to reporting

for night shift, Plaintiff alleges his rest was disturbed when he received a phone call from one of his supervisors during his rest period. (ECF Nos. 1, at 2, and 40-1, at 13.) According to Plaintiff, this disturbance caused him to report to work in a state of fatigue. (ECF No. 1, at 2, 4.) During his shift, Plaintiff claims there were no other crew members aboard the train to prevent him from falling asleep. (ECF No. 1, at 4.) Plaintiff also asserts the train's alarm system was non-operational on the date of the incident. *Id.* Plaintiff claims he woke up approximately three seconds before his train reached an occupied crossover in Florence and, as a result, he did not wake up in time to avoid the collision. (ECF No. 38-1, at 3.)

On December 8, 2016, Plaintiff filed a Complaint, asserting causes of action for general negligence under to the Federal Employers' Liability Act ("FELA") and strict liability. (ECF No. 1.) Plaintiff's complaint alleges that his injuries and damages are the result of the negligence acts of Defendant, including failure to furnish him with a reasonably safe place to work, failure to provide him with safe equipment to perform his assigned work, violation of the Federal Hours of Service Act, failure to staff Plaintiff's crew with properly trained engineers, failure to furnish Plaintiff with adequate supervision and negligent operation of Defendant's railroad activities. *Id.*, at 5-6.

On December 30, 2017, Defendant filed its Motion for Summary Judgment on four theories of negligence asserted by Plaintiff: (1) that Defendant caused Plaintiff to be chronically fatigued by assigning him to work a night shift job; (2) that Defendant should have provided more frequent hours-of-service training to Plaintiff; (3) that Defendant should have provided "fatigue" training to Plaintiff; and (4) that Defendant should have implemented a "fatigue management plan." (ECF Nos. 40, 40-1, at 1.) Defendant's Motion asserts that these theories of negligence under FELA should be dismissed as a matter of law because other federal railroad statutes and regulations that specifically address the subject matter of Plaintiff's negligence theories preclude Plaintiff from

being able to assert general negligence claims under FELA. (ECF No. 40.) More specifically, Defendant claims its liability, if any, should be determined based on its compliance with the federal statutes and regulations that address Plaintiff's specific negligence theories. (*Id.*) Defendant claims the federal statutes and regulations "pre-empt" general negligence claims under FELA. (*Id.*) On January 16, 2018, Plaintiff filed a Response in Opposition to Defendant's Motion, asserting Defendant's preemption analysis argument is improper and that the federal statutes and regulations cited by Defendant do not bar Plaintiff's FELA negligence claims. (ECF No. 46, at 3-4.) On January 23, 2018, Defendant filed a Reply. (ECF No. 50.) Thus, Defendant's Motion has been fully briefed and the Court held a hearing on the Motion on June 6, 2018. For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment. (ECF No. 40.)

**STANDARD OF REVIEW**

A court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of proving that summary judgment is appropriate. *Shealy v. Winston*, 929

F.2d 1009, 1012 (4th Cir. 1991). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs, 780 F.3d at 568 (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Thus, at the summary judgment phase, "[t]he pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal citation and quotation marks omitted).

## ANALYSIS

As set forth above, Plaintiff's negligence claims is based on FELA. FELA was enacted in 1908 to provide a railroad employee-plaintiff with a remedy for workplace injuries:

> Every common carrier by railroad… shall be liable… for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

49 U.S.C. § 51. Plaintiff claims that Defendant is liable under FELA for negligently causing Plaintiff to be chronically fatigued. (ECF No. 1, at 1-6.) Plaintiff has offered expert testimony that Defendant should have provided more frequent hours-of-service training to Plaintiff, provided "fatigue" training to Plaintiff and implemented a "fatigue management plan." (ECF Nos. 40-7 and 40-8.) These claims are the subject of Defendant's Motion. (ECF No. 40.)

Defendant argues there are no genuine issues of material fact on these issues and that Defendant is entitled to judgment as a matter of law. (ECF No. 40.) Defendants' arguments are based on the presence of other federal statutes and regulations that address these very issues.

Defendant claims that those statutes and regulations preclude Plaintiff from being able to assert general negligence claims under FELA based on standards other than those set forth in the other federal statutes and regulations.

More specifically, Defendant relies on the following three federal statutes relating to railroads: (1) the Federal Hours of Service Act ("HSA"), 49 U.S.C. § 21101 *et seq.*; (2) the Federal Rail Safety Improvement Act ("RSIA"), 49 U.S.C. § 20156; and (3) the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq*. Enacted in 1907, the HSA imposes hours of service limits for railroad employees. 49 U.S.C. § 21101. Defendant argues that in light of HSA's hours of service limits, any claim based on a standard for hours in service other than that in the HSA should be precluded. (ECF No. 40-1, at 9-14.) Enacted in 2008, the RSIA allows for fatigue management plans. However, the statute expressly does not apply to short-line freight railroads. Since the RSIA expressly excluded railroads like Defendant's from the requirement of a fatigue management plan, Defendant asserts that it could not be liable for not having such a plan. Alternatively, Defendant argues that the inadequacy of a plan should be precluded by federal law. The FRSA was enacted in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 USC § 20101. Defendant points out that the regulations adopted pursuant to the FRSA include hours of service, training related to hours of service, etc. which are the same topics as Plaintiff's claims at issue in Defendant's Motion. (ECF No. 40-1, at 14-17.) *See* 49 U.S.C. § 228.207; 49 C.F.R. § 228. Defendant also asserts that it is in full compliance with the FRSA regulations. (ECF No. 40-1, at 16.) Defendant claims that preclusion is appropriate in order to avoid the potential for liability under different standards. *Id.*

Defendant's argument is largely based on a series of opinions from the Fifth, Sixth and Seventh circuits. *Waymire v. Norfolk & W. Ry.*, 218 F.3d 773, 776 (7th Cir. 2000), *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 444 (5th Cir. 2001) and *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426,

430 (6th Cir. 2009). These opinions hold that FELA negligence claims are "precluded" by federal statutes and regulations that address the same subject matter as FELA negligence claims. The opinions rely on the United States Supreme Court decision of *CSX Transportation v. Easterwood*, 507 U.S. 658 (1993). In *CSX Transportation*, the plaintiff brought a negligence claim for excessive speed based on a Georgia statute. *Id.* at 658. However, Congress had adopted federal regulations regarding speed pursuant to the FRSA. Further, the FRSA contains the following pre-emption provisions:

> (a) National uniformity of regulation. -- (1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106. The Court held that the Georgia statute was pre-empted by FRSA and its regulations regarding speed. *Id*.

*Waymire* and *Lane* involved FELA negligence claims rather than state law negligence claims. The courts acknowledged that the FRSA's pre-emption provision was not directly applicable to a FELA claim since the FSRA refers to states and not the federal government. However, the courts held that the goals of uniformity as expressed in 49 USC § 20106(a)(1), and articulated in *CSX Transportation*, apply in the same way to federal negligence claims as they do to state negligence claims. Thus, the courts held that the FELA negligence claims based upon the

speed of the train are superseded by the FRSA and the regulations promulgated thereunder. *Waymire*, 218 F.3d at 776; *Lane*, 241 F. 3d. at 445. Using the same rationale, the court in *Nickels* dismissed a FELA negligence claim based on alleged oversized track ballasts due to the FRSA's regulations on that same issue. *Nickels*, 560 F. 3d at 430.

While the *Waymire* line of cases did not address hours in service and fatigue claims like those in this case, some federal district courts have. *See Payne v. Burlington Northern Railroad*, 2000 Mont. Dist. LEXIS 2104, *31-32 (D. Mont. 2000) (holding plaintiff's claim that the railroad assigned him to a chaotic work schedule causing fatigue was not compensable under the FELA because, in part, plaintiff's work schedule was governed by the Federal Hours of Service Act); *see also Schendel v. Duluth Missabe & Iron Range Ry. Co.*, 2014 Minn. Dist. LEXIS 8 (D. Minn. 2014) (holding that plaintiff's FELA claim that the railroad negligently 'pushed plaintiff to exhaustion' was precluded by the HSA). These district courts dismissed the FELA negligence claims.

In response, Plaintiff relies primarily on the *POM Wonderful LLC v. Coca-Cola Co* decision. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014). *POM Wonderful* involved a claim by POM, a manufacturer and seller of juice products, against its competitor Coca-Cola for false or misleading advertising under the Lanham Act, 15 U.S.C. § 1125. *Id.* at 2233. In defense to the claim, Coca-Cola argued that POM's Lanham Act claim was precluded by the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.* The FDCA prohibits "false or misleading" labeling of food and drink, or the placement of required information on the label in a non-prominent way. *Id.* at 2234. To implement the statute, the FDA has adopted regulations governing the labels on juice blends. *Id.* at 2234-35. Coca-Cola contended that it complied with those labeling regulations and, accordingly, should not be

subject to liability under the Lanham Act for the content of its labels that satisfied the requirements of the labeling regulations.[1]

The Supreme Court first recognized that the case involved the issue of "preclusion" rather than "preemption" because conflict was whether a federal statutory cause of action could be maintained in the face of other federal statutes or regulations, not whether a state cause of action could be maintained in the face of federal statutes or regulations. *Id.* at 2236. Next, the Court noted that the question presented issues of statutory interpretation where traditional rules of statutory interpretation should be applied. *Id*.[2] The Court then set forth a framework for a statutory construction analysis to evaluate whether the FDCA precluded POM's Lanham Act claim and, after applying the factors in that framework, concluded Congress did not intend for the FDCA to preclude Lanham suits like POM's. *Id*.[3]

Plaintiff also asserts that the vast majority of cases that have addressed the issue presented by Defendant's Motion since *POM Wonderful* have rejected the preclusion argument. *See, e.g., Fair v. BNSF Ry. Co.*, 238 Ca.App.4th 269, 282 (2015) (FRA "Track Safety Standards" setting out frequency of track inspections did not preclude FELA claim); *Trout v. Grand Trunk Western R.R. Co.*, 2014 WL 4792201, * 11 (Mich. Ct. App. Sept. 25, 2014) (unpublished) (concurring opinion) (FRA ballast regulation did not preclude FELA claim); *Hananburgh v.*

---

[1] As noted above, Plaintiff relies heavily on the *POM Wonderful* case from the United States Supreme Court. The Court has reviewed that decision carefully. There are certainly differences in the facts and issues in that case and the ones before the Court. However, the Court finds the decision helpful, particularly the portions which analyze and rely on the text of the statutes.

[2] The POM Court reasoned that Supreme Court precedent related to preemption "do[] not govern analysis in this case," although their principles "are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject." *POM Wonderful*, 134 S. Ct. at 2236.

[3] The Supreme Court considered the following factors in its analysis: the express terms of the statutes; the historical coexistence of the statutes; the complementary requirements of the statutes; the protections of the statutes; and the prescribed enforcement of the statutes. *POM Wonderful*, 134 S. Ct. at 2237-9.

*Metro-North Commuter R.R.*, 2015 WL 1267145, * 5 (S.D. N.Y. March 18, 2015) (unpublished) (FRA track inspection regulations did not preclude FELA claim); *Bratton v. Kansas City Southern Ry. Co.*, 2015 WL 789127, * 2 (W.D. La. Feb. 24, 2015) (unpublished); *Henderson v. National R.R. Passenger Corp.*, 2015 WL 728094, * 10 (S.D. N.Y. Feb. 19, 2015) (unpublished) (FRA roadway worker protection regulations did not preclude FELA claim): *Madden v. Anton Antonov & AV Transp., Inc.*, 4:12-CV-3090, slip op. at 11 (D. Neb. Feb. 17, 2015) (unpublished) (FRA railroad crossing regulations did not preclude FELA claim).

This Court found no Fourth Circuit or Supreme Court cases that address the issue of whether federal railroad statutes and regulations preclude FELA negligence on the topics covered by those federal statutes or regulations. Further, the parties point to no such cases.

The Court finds much of the logic of the *Waymire* line of cases compelling. However, in resolving Defendant's Motion, it is this Court's responsibility to base its decision on what the law says rather than what it believes Congress's intent might have been or what it believes is the most appropriate policy. To do that, the Court turns to the language of the HSA, FRSA and RSIA. As an initial matter, none of those statutes contain language indicating they were intended to displace FELA claims or that FELA claims for negligence based on any other standards are improper. If Congress intended that result, it could easily have added provisions to that effect in those statutes. It did not.

Further, the HSA, FRSA and RSIA have been on the books for years. During that time, they have been amended on multiple occasions. If Congress had intended for those statutes to preclude FELA negligence claims based on different standards of care, it has had many opportunities to do so. Despite the many years and despite multiple amendments, Congress has not enacted an amendment clarifying it intended the effect urged by Defendant.

In fact, the text of the statutes, if anything, suggests a contrary intent. Neither the HSA or the RSIA even mention pre-emption, much less preclusion. As noted above, the FRSA has a state law preemption section, but not a federal law preclusion section. The presence of a pre-emption section and the absence of a preclusion section suggests Congress did not intend to preclude claims under FELA based on differing standards.

Further, there is language in the text of the statutes that suggests the FRSA, HSA and RSIA are intended to be minimum requirements, not exclusive requirements. For example, 49 USC § 20106 provides that state standards more stringent than those adopted pursuant to the FRSA are not pre-empted. Also, the HSA in 49 USC § 21107 indicates it is providing the maximum limits on hours in service.

In conclusion, based on the text of the statutes, the Court cannot grant Defendant's Motion for Summary Judgment. (ECF No. 40.) Claims that a railroad that has complied with federal statutes and regulations is nevertheless negligent or a claim that a railroad should impose plans that Congress expressly considered and determined were not required for railroads of this type may face an uphill battle in front of a jury. However, had Congress intended to prevent the claims from ever being asserted, it had and has continued to have many opportunities to do so. Since, it has not, this Court finds that there are genuine issues of material fact.

## III. Conclusion

For the abovementioned reasons, the Court DENIES Defendant's Motion for Summary judgment. (ECF No. 40.)

s/ A. Marvin Quattlebaum, Jr.
Hon. A. Marvin Quattlebaum, Jr.
United States District Judge

August 7, 2018
Greenville, South Carolina